LEONARD WOODBURY & others *vs.* FOSTER FREELAND & another.

The *St.* of 1855, *c.* 304, § 1, providing that the real and personal property of " any woman who may hereafter be married in this commonwealth," and its rents, issues and profits, shall remain her sole and separate property, applies to the case of a woman who, with her husband, have their domicil in this commonwealth at the time of their marriage, although the marriage is solemnized in another state; and satisfies a condition in a will, giving property to her upon condition that it shall not be sold, transferred or improved until the principal and income are secured to her sole use and benefit.

MERRICK, J. The demandants are the heirs at law of Zadok Woodbury, late of Sutton, in this county. By his last will and testament he bequeathed and devised all his real and personal estate, of which the demanded premises were a part, to his niece Frances Jane Woodbury, " upon condition that the property both real and personal so given and bequeathed is not to be sold, transferred or improved, without the rents and profits thereof are secured to her sole use and benefit, as well as the principal, during her natural life." The will was made on the 22d of February 1850, and was duly proved and allowed on the 7th of January 1858, the testator having died on the 7th of November 1857. Frances Jane Woodbury was married to Foster Freeland in the city of New York on the 27th of April 1858, both the parties then being residents and having their domicil in said town of Sutton. She died on the 15th of February 1859, leaving one child, who is a tenant in the present suit. Neither she nor her husband ever took any steps to secure the devised real and personal estate, or the rents, profits

or income of either, to her sole and separate use. The demand-ants contend that this omission was a breach of the condition upon which the devise was made, that the real estate became thereby forfeited, and thereupon descended to them as heirs at law of the testator.

By the *St.* of 1855, *c.* 304, it is provided " that the property, both real and personal, which any woman who may hereafter be married in this commonwealth may own at the time of her marriage, and the rents, issues, profits and proceeds thereof, and any real and personal property which shall come to her by de-scent, devise or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwith-standing her marriage, and not be subject to the disposal of her husband, or liable for his debts."

The tenants contend, that by force of these provisions the real and personal estate devised to Frances Jane Woodbury was in fact and in law secured to her sole use and benefit dur-ing her natural life ; and therefore that there neither was nor could have been any breach of the condition upon which the devise to her was made. And this is undoubtedly so, if, upon a proper construction of the language of the statute, it appears that she was in a situation which entitled her to the benefit of its provisions. When the law confers upon a party a right, or secures to him a benefit or privilege, in terms absolute and unconditional, he is relieved altogether from the necessity of doing any act or resorting to any means whatever to make it available to him. And since the statute declares in clear and unambiguous terms that the estate which a woman has at the time of her marriage shall, together with all the rents, issues and profits to be derived from it, continue to be her own sole and separate property, notwithstanding the marriage, and in no manner subject to the disposal of her husband, or liable to be taken by his creditors, any act done or means resorted to by her or by her husband to establish and confirm her right to the sole use and enjoyment of her property during her coverture would be entirely superfluous.

But it is objected, that Frances Jane Woodbury was not

upon her marriage entitled to claim and hold the rights and benefits secured to married women by this statute, because the ceremony or act of marriage between her and Foster Freeland took place in the state of New York. If the words "any woman married in this commonwealth" are to be taken literally, and in their exact sense, and without regard to their import and signification when considered in their connection with the other provisions in the statute, and the particular objects and purposes manifestly intended to be accomplished by it, this objection must be allowed to prevail. But that is not the principle upon which statutes are to be interpreted; but, on the contrary, in the exposition of any enactment, the intention of the legislature is to be deduced from a view of the whole and every part of it, taken and compared together; and this intention, when accurately ascertained, is always to be received and accepted instead of the literal sense of the particular words or terms in which it is expressed. 1 Kent Com. (6th ed.) 461. *Somerset* v. *Leighton*, 12 Mass. 384. Under this rule of interpretation we can entertain no doubt that the phrase "any woman hereafter married in this commonwealth" is to be construed as extending to and including parties both of whom have their domicil and are actual inhabitants here, although the act of marriage between them is solemnized in another state, during their temporary absence from this. Such an absence is never held to affect the rights, privileges or liabilities of actual inhabitants. Their personal property continues liable to taxation, their settlement remains unchanged, the elective franchise is not lost by it. *Sacket's case*, 1 Mass. 58. *Jennison* v. *Hapgood*, 10 Pick. 77. *Athol* v. *Watertown*, 7 Pick. 42. *Otis* v. *Boston*, 12 Cush. 44. *Sears* v. *Boston*, 1 Met. 250. In the case last cited it is said by Shaw, C. J.: "If the departure from one's fixed and settled abode is for a purpose in its nature temporary, whether it be business or pleasure, accompanied with an intent of returning and resuming the former place of abode as soon as such purpose is accomplished; in general, such a person continues to be an inhabitant at such place of abode, for all purposes of enjoying civil and political privileges, and of being subject to civil duties."

The object and purpose of the legislature in the enactment of the statute to protect the property of married women was plainly to introduce into this state a new rule, essentially different from that prevailing under the common law, for regulating and establishing the rights of all the people of this commonwealth who should, while they are resident inhabitants, contract and enter into the marital relation. This is manifest both in its general declared objects and in particular provisions contained in it. Thus in the fourth section provision is made for the mode of proceeding by the wife in the sale of her real estate or shares in incorporated companies in case of the absence of her husband from the Commonwealth. And the eighth section secures to a married woman the rights she acquired in a foreign jurisdiction if her husband shall afterwards become a resident here. The act in all its aspects was clearly intended to determine the rights which should be secured and enjoyed by the wife when both of the parties to the marriage are at the time of entering into that relation inhabitants of the Commonwealth. This great purpose of the statute cannot be set aside or rendered nugatory by the mere fact that the ceremony of marriage is observed or solemnized out of the Commonwealth during their temporary absence from it. On their return to the abode and domicil which they had never left, given up or abandoned, they respectively became entitled to the rights which are ordained and established by the statute.

The conclusion therefore must be that, upon the facts reported, Frances Jane Woodbury was, upon her marriage, entitled to claim and have all the rights and benefits secured by the provisions of the statute to the married women therein mentioned; and consequently that there was no breach of the condition upon which the demanded premises were devised to her in and by the will of Zadok Woodbury; but the same became absolutely vested in her, and at her death descended to her child, who is one of the tenants, as her heir at law.

*Demandants nonsuit.*

P. C. Bacon, for the demandants.
E. Mellen & W. S. Davis, for the tenants.